12-1264 (L)
Hausler et al., v. JPMorgan Chase Bank, N.A., et al.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

AUGUST TERM, 2012

(ARGUED: FEBRUARY 11, 2013                    DECIDED: OCTOBER 27, 2014)

Docket Nos. 12-1264 (Lead), 12-1272 (Con), 12-1384 (Con), 12-1386 (Con), 13-1463 (Con), 12-1466 (Con), 12-1945 (Con)

_____

JEANNETTE FULLER HAUSLER, as Successor Personal Representative of THE ESTATE OF ROBERT OTIS FULLER, Deceased, on behalf of THOMAS CASKEY as Personal Representative of THE ESTATE OF LYNITA FULLER CASKEY surviving daughter of ROBERT OTIS FULLER, and JEANNETTE HAUSLER,

*Plaintiff - Third-Party Defendants - Appellees*,

ESTATE OF ROBERT OTIS FULLER, FREDERICK FULLER, GRACE LUTES, IRENE MOSS, and FRANCES FULLER,

*Plaintiffs - Third-Party Defendants*,

v.

JP MORGAN CHASE BANK, N.A., CITIBANK, N.A., ROYAL BANK OF SCOTLAND N.V., FKA ABN AMRO BANK N.V., BANK OF AMERICA CORPORATION, UBS AG, and BANK OF AMERICA N.A.,

*Defendants - Garnishees - Third-Party Plaintiffs - Appellees*,

DRESDNER LATEINAMERIKA AG, FKA DRESDNER BANK LATEINAMERIKA AG, ABBOTT LABORATORIES, INC., PETROLEOS DE VENEZUELA, S.A., FUNDACION BENFICA NICOLAS S. ACEA, PABLO ALCAZAR, as trustee of FUNDACION BENEFICA NICOLAS S. ACEA, MAYRA BUSTAMENTS, and RENE SILVA, JR., as trustee of FUNDACION BENEFICA NICOLAS S. ACEA,

*Third-Party Defendants*,

REPUBLIC OF CUBA, FIDEL CASTRO RUZ, Individually, As First Vice President of the Council of State and Council of Ministers and Head of the Cuban Revolutionary Armed Forces, Cuban Revolutionary Armed Forces, El Ministerio Del Interior,

1

*Defendants – Third-Party Defendants*,

v.

LTU LUFTTRANSPORTUNTERNEHMEN, LTU GMBH IN CARE OF KIRSTEIN & YOUNG PLLC 1750 K STREET NW, SUITE 200 WASHINGTON, DC 20006,

*Consolidated - Third-Party Defendant - Appellant*,

BANCO BILBAO VIZCAYA ARGENTARIA, S.A., BANCO BILBAO VIZCAYA ARGENTARIA PANAMA, S.A.,

*Claimants - Appellants*,

ESTUDIOS MERCADOS Y SUMINISTROS, S.L., PHILIPS MEXICANA S.A. DE C.V., NOVAFIN FINANCIERE, S.A.,

*Respondents - Appellants*,

CAJA DE AHORROS Y MONTE DE PIEDAD DE MADRID, PREMUDA S.P.A.,

*Interpleaders - Appellants*,

SHANGHAI PUDONG DEVELOPMENT BANK CO. LTD.

*Third-Party Defendant - Appellant*,

AEROFLOT RUSSIAN AIRLINES,

*ADR Provider - Appellant*,

BANCO SANTANDER S.A., CAJA MADRID, BANCO ESPANOL DE CREDITO, BANCO SANTANDER TOTTA, S.A., UNION BANCAIRE PRIVEE, BANCO CENTRAL DE VENEZUELA, and BANCO DE DESARROLLO ECONOMICO Y SOCIAL DE VENEZUELA,

*Respondents*,

SAN PAOLO BANK S.A. and ING BANK N.V.,

*Claimants.**

Before:      HALL, LYNCH, AND CARNEY, *Circuit Judges.*

_____

---

* The Clerk of Court is respectfully directed to amend the caption to conform to that above.

At issue in this case is whether § 201 of the Terrorism Risk Insurance Act of 2002 permits attachment of blocked electronic funds transfers. Because none of the transfers in this case were sent directly from the terrorist party or its agents or instrumentalities to the blocking bank, the judgment of the United States District Court for the Southern District of New York permitting attachment (Marrero, *J.*) is hereby REVERSED.

————————————————

DAVID ALAN BARON, JAMES WILSON PERKINS, ROBERT PHILLIP CHARROW, and LAURA METCOFF KLAUS, Greenberg Traurig, LLP, Washington, D.C. for *Jeannette Hausler, Estate of Robert Otis Fuller, Frederick Fuller, Grace Lutes, Irene Moss, and Frances Fuller*

JUANCARLOS SANCHEZ, ESQ. AND WILFREDO A. RODRIGUEZ, Avila Rodriguez Hernandez Mena & Ferri LLP, Coral Gables, Florida for *Banco Santander, S.A., Caja Madrid, Caja de Ahorros y Monte do Piedad de Madrid, and Caja Madrid*

BERNARD JAMES GARBUTT, III, Morgan, Lewis & Bockius LLP, New York, New York for *Banco Espanol De Credito, Banco Santander Totta, S.A., Union Bancaire Privee, Banco Central de Venezuela, Banco de Desarrollo Economico y Social de Venezuela, Estudios Mercados y Suministros, S.L., and Philips Mexicana S.A. de C.V.*

MATTHEW BELZ, KENNETH CARUSO, AND GLENN M. KURTZ, White & Case LLP, New York, New York for *Banco Bilbao Vizcaya Argentina Panama, S.A., Banco Bilbao Vizcaya Argentaria, S.A., and Shanghai Pudong Development Bank Co. Ltd.*

JAMES L. KERR AND KAREN E. WAGNER, Davis Polk & Wardwell LLP, New York, New York for *San Paolo Bank, S.A., ING Bank, N.V., JPMorgan Chase Bank, N.A., Citibank, N.A., The Royal Bank*

3

*of Scotland N.V., Bank of America, Corp., UBS AG, and Bank of America N.A.*

DAVID MICHAEL KIRSTEIN, Kirstein & Young PLLC, Washington, DC, for *LTU Luftransport-Unternehmen, LTU Gmbh In Care of Kirstein & Young PLLC*

CLAURISSE CAMPANALE-OROZCO, Tisdale Law Offices, LLC, New York, New York for *Premuda S.p.A.*

DAVID S. JONES, United States Attorney's Office for the Southern District of New York, New York, New York, for *the United States of America*.

_____

Per Curiam:

Before us on appeal is a matter of first impression regarding the interpretation of § 201 of the Terrorism Risk Insurance Act of 2002 (codified at 28 U.S.C. § 1610 note) ("TRIA"). The plaintiffs-appellees (collectively "Hausler") are family members or trustees of the estates of victims of state-sponsored terrorism. They seek to enforce their 2009 Florida state court judgment ("the underlying judgment") obtained against, among others, the Republic of Cuba ("Cuba") by attaching the blocked assets of that state pursuant to TRIA § 201. Specifically, Hausler seeks to satisfy the underlying judgment from electronic fund transfers ("EFTs") blocked pursuant to the Cuban Assets Control Regulations, 31 C.F.R. Part 515.[1] The defendant-garnishee banks at which the EFTs are stopped pursuant to the block oppose turning over the value of the EFTs. The dispositive questions are whether and under what factual circumstances TRIA permits the attachment of mid-stream EFTs.

---

[1] For a detailed explanation of how EFTs function, see *Shipping Corp. of India Ltd.v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 60 n.1 (2d Cir. 2009).

4

**BACKGROUND**

### A. Underlying Judgment

The appellees are family members and estate representatives of Bobby Fuller, an American citizen who was arrested and executed by Cuban government forces on October 16, 1960. In 2005, the Hausler plaintiffs sued Cuba and others under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq*., in the Eleventh Judicial District, Miami-Dade County, Florida. Cuba did not appear and after conducting a hearing, the Florida state court awarded the Hausler plaintiffs $400,000,000 in combined compensatory and punitive damages. Cuba did not appeal this judgment. The judgment remains unsatisfied.

Since March 1, 1982, Cuba has been continuously designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 by the United States Department of State.

### B. Judgment Collection and Proceedings Before the District Court

To enforce the judgment, Hausler sought in the Florida state courts writs of garnishment on United States companies which, according to Hausler, were indebted to Cuba. The garnishees removed the garnishment proceedings to the United States District Court for the Southern District of Florida, arguing that federal subject matter jurisdiction existed under 28 U.S.C. §§ 1330, 1332, and TRIA.

In a parallel action, Hausler sought a full faith and credit determination for the underlying state judgment in the United States District Court for the Southern District of Florida. That request was granted on August 20, 2008. The judgment was then registered in the United States District Court for the Southern District of New York, and Hausler commenced additional collection proceedings in that court. The Florida garnishment actions were (1) ultimately transferred to the Southern District of New York and consolidated with the actions there or (2)

5

dismissed without prejudice to be pursued in the Southern District of New York along with the transferred and consolidated actions.

On July 6, 2010, Hausler filed three petitions (hereinafter petitions I, II, and III) under Fed. R. Civ. P. 69 and N.Y. C.P.L.R. § 5225(b) against the defendant-garnishee banks to turn over the value of the EFTs at issue in this case. The garnishee banks moved to dismiss turnover petition III, arguing, among other things, that Cuba had no property interest in the EFTs. The district court denied the motion, holding that TRIA preempted state law with respect to which entities had a property interest in mid-stream EFTs and that Cuba had a sufficient property interest in the EFTs for Hausler to execute upon them. The banks then commenced an interpleader action regarding Petitions I and III. Numerous adverse claimant respondents appeared (collectively "the ACRs"), each claiming to have an interest in the blocked EFTs superior to Hausler's. Hausler then moved for judgment on the pleadings or, in the alternative, summary judgment regarding Petitions I and III. The garnishee banks and ACRs cross-moved for summary judgment. The district court granted summary judgment in favor of Hausler for essentially the same reasons given in its earlier decision.[2] This appeal followed.

## DISCUSSION

On appeal the garnishee-banks and ACRs argue that the blocked EFTs are not attachable "assets of" Cuba under TRIA § 201. We review *de novo* the "threshold issue of whether EFTs are . . . property" of a particular party. *Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, No. 12-0075, slip op. at 12 (2d Cir. Oct. 23, 2014) (quoting *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.,* 585 F.3d 58, 66–67 (2d Cir. 2009)).

---

[2] Judge Marrero also ruled on the priority of claims between the ACRs and Hausler. However, because this case can be resolved on the basis of whether the funds can be attached under TRIA at all, we do not reach those issues.

In the ordinary case, a foreign state will be "immune from the jurisdiction of the courts of the United States and of the States" pursuant to the Foreign Sovereign Immunities Act ("FSIA"). 28 U.S.C. § 1604 (1988). Congress, however, has created terrorism-related exceptions to immunity under FSIA. *See Calderon-Cardona*, slip op. at 7. One such exception is TRIA's authorization of the attachment of the property of terrorist parties and that of their agencies or instrumentalities to satisfy certain judgments issued against them. *See* TRIA § 201(a). In particular, TRIA provides that:

> Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based on an act of terrorism, or for which a terrorist party is not immune under [28 U.S.C. § 1605(a)(7)], the blocked *assets of that terrorist party* (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in the aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA § 201(a) (emphasis supplied).

"[W]hether or not midstream EFTs may be attached or seized depends upon the nature and wording of the statute pursuant to which attachment and seizure is sought." *Export-Import Bank of U.S. v. Asia Pulp & Paper Co.*, 609 F.3d 111, 116 (2d Cir. 2010). As with FSIA § 1610(g), Congress did not define the "type of property interests that may be subject to attachment under" TRIA § 201(a). *Calderon-Cardona*, slip op. at 12 (interpreting FSIA § 1610(g)). While the Cuban Assets Control Regulations, for purposes of those regulations, include a non-exhaustive list of types of property that may be attached, 31 C.F.R. § 515.311(a), EFTs involving a Cuban bank are not among the types of property identified. When Congress leaves a gap in a statute that "has not created any new property rights, but 'merely attaches consequences, federally defined, to rights created under state law,' we must look to state law to define the 'rights the judgment debtor has in the property the [creditor] seeks to reach.'"

7

*Calderon-Cardona*, slip op. at 12–13 (quoting *Asia Pulp*, 609 F.3d at 117). Here, the banks at which the EFTs are blocked are in New York, so we look to New York property law to fill the gap.

We recently explained in *Calderon-Cardona* "that under New York law 'EFTs are neither the property of the originator nor the beneficiary while briefly in the possession of an intermediary bank.'" *Id*. at 13 (quoting *Jaldhi*, 585 F.3d at 71). As such, "the only entity with a property interest in the stopped EFT is the entity that passed the EFT on to the bank where it presently rests." *Id*. at 14. Thus, in order for an EFT to be a "blocked asset of" Cuba under TRIA § 201(a), either Cuba "itself or an agency or instrumentality thereof (such as a state-owned financial institution) [must have] transmitted the EFT directly to the bank where the EFT is held pursuant to the block." *Id.*

Unlike in *Calderon-Cardona*, where a remand was necessary to determine whether the EFTs at issue were attachable, it is undisputed that no Cuban entity transmitted any of the blocked EFTs in this case directly to the blocking bank. As a result, neither Cuba nor its agents or instrumentalities have any property interest in the EFTs that are blocked at the garnishee banks. Because no terrorist party or agency or instrumentality thereof has a property interest in the EFTs, they are not attachable under TRIA § 201.

## CONCLUSION

We have reviewed the parties' additional arguments and find them unavailing. In light of the foregoing analysis, the judgment of the District Court is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.